# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA RENEE SMITH,<br><br>      Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>**Acting Commissioner of the Social Security Administration,**<br><br>      Defendant. | Case No. 4:16-cv-00431-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |

## OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for decision. Pamela Renee Smith ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

### I.     Procedural Background

On January 8, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, 1382-1383 ("Act"), with a last insured date of December 31, 2014,[2] and a disability onset date of May 5, 2012. (Tr. 29). On October 29, 2014, the Administrative Law Judge ("ALJ") found Plaintiff was not disabled within the meaning of the Act. (Tr. 26-44). Plaintiff sought review of the unfavorable decision, which the

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration ("SSA") and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Disability insurance benefits ("DIB") are paid to an individual if that individual is disabled by last date that a claimant meets the requirements of being insured. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

Appeals Council denied on April 29, 2016, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner of the Social Security Administration. (Tr. 1-7).

On July 1, 2016, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal a decision of Defendant denying social security benefits. (Doc. 1). On March 17, 2017, Defendant filed an administrative transcript of proceedings. (Doc. 10). On August 21, 2017, Plaintiff filed a brief in support of the appeal. (Doc. 14 ("Pl. Br.")). On October 19, 2017, Defendant filed a brief in response. (Doc. 16 ("Def. Br.")). On November 6, 2017, Plaintiff filed a reply. (Doc. 17 (Reply)).

## II.     Issues On Appeal

On appeal, Plaintiff alleges three errors: (1) the Residual Functional Capacity ("RFC") finding is erroneous; (2) the credibility findings are not supported by substantial evidence; and (3) the ALJ failed to develop vocational testimony based on substantial evidence. (Pl. Br. at 4).

## III.    Facts in the Record

### A.     Background

Plaintiff was born in December 1960 and thus is classified by the regulations as an individual closely approaching advanced age through the date of the ALJ decision. (Tr. 35); 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff alleged disability due to: (1) status post-surgery of bilateral shoulders, one wrist, and one knee; (2) bilateral shoulder pain which includes difficulty to lift or hold things; (3) numbness in left wrist; (4) left knee painful to stand long; (5) lower back pain, and; (6) arthritis in neck, chest, shoulders, and arms. Pl. Br. at 1-2. Plaintiff completed the twelfth grade. (Tr. 207). The vocational expert testified that Plaintiff's past relevant work consisted of working as a customer service manager, which was classified as medium work and with an SVP level of 7. (Tr. 86-87).

### B.     Medical Opinions

1. **Orthopedic Surgeon: Eugene Feild, M.D.**

Dr. Field treated Plaintiff from March 2009 to October 2010 (Tr. 301-326). Dr. Feild operated on the Plaintiff's right shoulder on December 4, 2009, (Tr. 283-300) and on her left shoulder on March 5, 2010 (Tr. 275-282). On May 6, 2010, Dr. Feild stated that Plaintiff presented with a full range of motion and stated that:

> Even though she has had both shoulders operated it is unlikely that she will qualify for any significant disability from a Social Security standpoint. She is anxious to return to her activities and return to work. I therefore have released her with restrictions primarily for avoidance of overhead work but she may return to full under shoulder activity and lifting without weight restrictions. [Plaintiff] is, in my opinion, maximally medically improved.

(Tr. 305). In an attached report Dr. Feild released Plaintiff to modified work as of May 6, 2010, with a permanent restriction of above chest and overhead reaching. (Tr. 306). Dr. Feild opined that continuing treatment or vocational rehabilitation was unnecessary. (Tr. 306).

2. **Workers' Compensation Evaluations: William Gillock, M.D.**

In March 2011, Dr. Gillock examined Plaintiff and noted that the motor function of the shoulders was normal, no crepitance was noted on range of motion (ROM) testing, left hand had normal motor function. (Tr. 437-38). In the March 2011 evaluation, Dr. Gillock assigned a fifteen percent permanent partial impairment rating to the left arm, which converted to a nine permanent partial impairment to the left shoulder. (Tr. 438).

In an April 2011 examination, Dr. Gillock observed normal sitting posture, standing posture, gait, no assistive devices, no tenderness upon palpation, normal sensor examination of the lower extremities, Straight Leg Raise ("SLR") produced back pain at thirty degrees of elevation bilaterally, and motor function of the shoulders were normal. (Tr. 445-48). Dr. Gillock concluded that Plaintiff reached maximum medical improvement and had no permanent partial impairment to her neck, shoulders, left arm, hands or low back from her alleged injuries. (Tr. 449).

In July 2012, Dr. Gillock reviewed diagnostic testing and upon examination observed that motor function in Plaintiff's shoulders were normal, there was no crepitance upon range of motion testing of the shoulders (Tr. 455). Dr. Gillock noted that the range of motion in the right shoulder was less than the left shoulder. (Tr. 455). Plaintiff's right arm flexion was 120 degrees, while left was 150 degrees, right abduction was 120 degrees while left was 140 degrees, right internal and external rotation was 60 degrees and the left was 90 degrees. (Tr. 455). Dr. Gillock concluded Plaintiff had a nineteen percent permanent partial impairment to her right arm, nine percent due to loss of motion and ten percent due to resection arthroplasty of the distal clavicle. (Tr. 456).

In October 2012, Dr. Gillock again reviewed Plaintiff's medical history and report of symptoms. (Tr. 458-460) Dr. Gillock noted that Plaintiff had a period of temporary total disability from April 13, 2012, to June 7, 2012. (Tr. 461). Upon examination, Dr. Gillock observed that Plaintiff had a normal gait, no ambulatory aids were used, no instability was present in the anterior and posterior drawer testing, sensory and motor testing of the leg was normal, and, flexion was 110 degrees in left knee and 130 degrees in the right knee. (Tr. 461-62). Dr. Gillock opined Plaintiff had a seven percent permanent partial impairment to her left knee, released her without restrictions, and said she did not require vocational rehabilitation. (Tr. 462). Dr. Gillock added, "I find no evidence of injury or impairment to any other body part." (Tr. 462).

In April 2013, Dr. Gillock examined Plaintiff and observed that her gait was normal and she did not use any ambulatory aids. (Tr. 384). Regarding range of motion testing, Dr. Gillock noted (1) bilateral shoulder adduction at fifty degrees and internal and external rotation at thirty degrees; (2) bilateral elbows with zero degrees extension, 150 degrees flexion, eighty degrees pronation, and eighty degrees supination, and; (3) bilateral wrists with sixty degrees extension and flexion, twenty degrees radial deviation, and thirty degrees ulnar deviation. (Tr. 385). Dr. Gillock concluded that Plaintiff was not permanently and totally disabled. (Tr. 386).

### 3. Workers' Compensation Evaluation: Gary Lee, M.D.

On January 30, 2013, Dr. Lee summarized the history of eight injuries between August 1992 and November 2008. (Tr. 465-66). Upon examination, Dr. Lee noted: (1) tenderness with diminished range of motion in the thoracic spine; (2) tenderness with diminished range of motion in the lumbar spine with lumbar flexion of twenty degrees, sacral flexion of thirty degrees, sacral extension of five degrees, lumbar extension of five degrees, right and left lateral flexion of ten degrees; (3) pain and tenderness with crepitus in both shoulders, with forward flexion and abduction of 140 degrees, external and internal rotation of 60 degrees, backward flexion of 30 degrees and adduction of 10 degrees bilaterally; (4) diminished flexion and extension in the left wrist; (5) deformity and crepitus with pain on weight-bearing with the left knee, swelling in the left knee, and Plaintiff demonstrating a "painful limping gait"; (6) normal strength to toe and heel walking, normal muscle tone; (7) gross motor testing showed 5/5 strength to the musculature of the upper and lower extremities, and; (8) Romberg testing was normal. (Tr. 467-68). Dr. Lee concluded that "[t]he combined effect of [Plaintiff's] disabilities and her occupational related medical conditions render[ed] her permanently totally disabled." (Tr. 468).

### 4. Workers' Compensation Evaluations: Anne S. May, M.D.

In October 2010, Dr. May sent a letter to Plaintiff's attorney regarding worker's compensation benefits. (Tr. 412-14). Dr. May said Plaintiff was "100% temporarily totally disabled as a result of her lumbar spine injury, due to the fact that she cannot stand or walk for very long comfortably." (Tr. 414). She also said she could not bend, squat, or sit for very long. (Tr. 414). In November 2010 Dr. May sent another letter to Plaintiff's attorney (Tr. 417-20), wherein she opined that Plaintiff "w[ould] not be able to return to her previous duties which required substantial bilateral upper extremity strength and dexterity," but "should be referred for consideration for vocational rehabilitation to find more suitable employment." (Tr. 420). In

December 2010, Dr. May said Plaintiff continued to be 100% temporarily disabled as a result of her lumbar spine injury." (Tr. 422).

In September 2011, Dr. May said Plaintiff continued to experience significant pain in her neck and chronic spasms in her back with radiation of pain into her arms. (Tr. 426). She said Plaintiff continued to experience pain in her low back, which markedly impaired her ability to perform activities of daily living, and ongoing symptoms of pain involving a nerve root in her low back on the left side. (Tr. 426). Dr. May said all of this impaired Plaintiff's ability to perform her employment at the same level as before her injury. (Tr. 426). She said Plaintiff had a "permanent partial impairment of 37.4% to the whole person for her lumbar spine injury" and a "permanent partial impairment of 16% to the whole person for her cervical spine injury." (Tr. 427). Dr. May opined that Plaintiff had a ten percent permanent partial impairment to each arm. (Tr. 427).

In February 2012, Dr. May noted Plaintiff continued to experience weakness, pain, and diminished range of motion in her shoulder, which impaired her ability to perform her activities of daily living and employment at the same level as before her injury. (Tr. 431). Dr. May opined Plaintiff sustained a thirty-seven percent permanent partial impairment to the whole person for her right shoulder injury. (Tr. 431). In Feb 2013, Dr. May opined the dysfunction of Plaintiff's knee prevented her from performing activities of daily living without significant pain and instability. (Tr. 372). According to Dr. May, because of her left knee and low back injuries, Plaintiff was "not able to perform her usual work duties and is 100% temporarily totally disabled." (Tr. 373).

5. **Agency Reviewing Opinion: J. R. Vorhies, M.D.**

In the April 2013 opinion, Dr. Vorhies reviewed the records, which at the time did not include any opinion evidence and opined that Plaintiff could: (1) occasionally lift and/or carry (including upward pulling) twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk for a total of six hours in an eight-hour workday, and; (4) sit for a total of six hours in

an eight-hour workday. (Tr. 98-104). Dr. Vorhies also opined that Plaintiff was limited in her right arm in the ability to push and/or pull (including operation of hand and/or foot controls). (Tr. 104). In support of his opinion Dr. Vorhies listed Plaintiff's medical history including: (1) history of falling in November 2008; (2) Arthroscopic surgery in the left knee in April 2012; (3) alleged back pain with an MRI revealing multilevel bulging discs; (4) a February 2013 knee MRI revealing, osteoarthritis, chondromalacia, and meniscus injury; (5) a February 2013 workers' compensation examination observing that Plaintiff ambulates without asymmetry, left knee was tender with demonstrated crepitance and alleged weakness, lumbar muscle tenderness with limited range of motion (ROM), straight leg raise (SLR) produces pain; (6) Plaintiff's history of bilateral shoulder surgery (several on the right shoulder), and; (7) January 2009 MRI evidence of right partial rotator tear/tendonopathy. (Tr. 103). Dr. Vorhies further noted that Plaintiff's history of back pain and surgeries support a finding of postural limitations (Tr. 103), and opined that Plaintiff was limited in left and right overhead reaching to occasional overhead reaching due to bilateral rotator cuff surgeries. (Tr. 103-04). Dr. Vorhies summarized records from Crestwood Clinic, an October 2012 Workers' Compensation adjudication that Plaintiff sustained a permanent partial impairment of 17% to the left leg for left knee injury and noted that Plaintiff had not had further evaluation or treatment for left knee injury. (Tr. 104).

Dr. Vorhies also noted Plaintiff's initial treatment for lumbar spine injury at Concerta, her physical therapy and radiographic imaging in 2009, Dr. Field evaluated Plaintiff noting a mild bulging of L4-5 disc which was unchanged from previous MRI of October 2007, an EMG nerve conduction was obtained and revealed old damage, particularly of the LS nerve root and surgical intervention was not recommended at that time. (Tr. 104). Dr. Vorhies noted that in September 2011 Plaintiff was evaluated by Anne May M.D., who opined that Plaintiff sustained a permanent

partial impairment of 37.4% to the whole person for her lumbar spine injury. (Tr. 104 (summarizing Tr. 427)). Dr. Vorhies continued:

> Physical exam revealed that [Plaintiff] ambulates without asymetry and was able to get onto the exam without assistance. Examination of [Plaintiff's] left knee reveals that there were well-healed surgical punctuate scars scattered about the knee. There was tenderness to palpation over the medial and lateral aspects. There was also audible crepitance and weakness noted with flexion and extension of the left knee when tested against resistance. There was muscle atrophy noted of [Plaintiff's] left gastrocnemius muscle when compared to the right side. Deep tendon reflexes are 2+ and equal in the lower extremities and there are no sensory abnormalities noted in the lower extremities.
>
> Examination of [Plaintiff's] lumbar spine reveals there was moderate spasm of the paraspinous musculature which was tender to palpation diffusely. [Plaintiff's] tenderness is more significant over her left proximal gluteal region, sacroiliac joint and left greater trochanter. Straight leg raise was positive on the left as well for pulling sensation into the left gluteal region. Range of motion of the lumbar spine was limited inflexion and lateral bending motions and was very uncomfortable for [Plaintiff] to perform.
>
> [A February 2013] MRI on lumbar spine . . . at Advanced Imaging revealed that the mid to lower lumbar spine facet arthrosis and [broad] based disc bulges at L3-L4 and L4-5 with neuroforaminal narrowing, particularly on [Plaintiff's] left at both side levels.
>
> MRI of the left knee was obtained on the same date and revealed osteoarthritis, particularly of the medial femororotibial compartments with tricompartmental chondromalacia, complex degenerative-like tearing versus postoperative changes involving the medial [meniscus]. It was noted that when compared to [the January 2011] examination . . . there was no significant interval change.
>
> Dr. Anne May stated that the in her own opinion as a result of [Plaintiff'] left knee injury and her lumbar spine injury [Plaintiff] is not able to perform her usual work duties and was 100% temporarily disabled.
>
> . . .
>
> [Regarding activities of daily living (ADLS), Plaintiff] stated that she is able to take care of her personal hygiene and grooming. She is able to fix coffee, frozen meals, and sandwiches. [Plaintiff] is able to make her bed and do laundry, she can shop for household items and groceries, drive, pay bills, count change, handle a savings account, and use a checkbook/money orders. She is [able] to follow spoken and written instructions.

(Tr. 104-05).

### 6. Agency Reviewing Opinion: San-San Yu, M.D.

In August 2013 Dr. San-San Yu reviewed the medical record and rendered an opinion regarding the extent of Plaintiff's limitations. (Tr. 109-121). Dr. San-San Yu gave Dr. Gillock's April 2013 opinion great weight, explaining that the opinion was substantiated by the medical and non-medical evidence in the record. (Tr. 116). Dr. San-San Yu opined that Plaintiff: (1) could occasionally lift and/or carry twenty pounds; (2) could frequently lift and/or carry ten pounds; (3) could stand and/or walk a total of six hours in an eight-hour workday; (4) could sit six hours in an eight-hour workday, and; (5) was limited in her ability to push and/or pull with the upper right extremity. (Tr. 116-17). In support of the opinion Dr. San-San Yu listed the same evidence as that noted in Dr. Vorhies' April 2013 opinion. Compare (Tr. 117) with (Tr. 103). Dr. San-San Yu further noted that Plaintiff's history of back pain and knee surgeries support a finding of postural limitations (Tr. 117), and opined that Plaintiff was limited in left and right overhead reaching to occasional overhead reaching due to bilateral rotator cuff surgeries. (Tr. 117-18).

Dr. San-San Yu summary of Plaintiff's medical records are substantively similar to the summary provided in Dr. Vorhies' April 2013 opinion. Compare (Tr. 118) with (Tr. 104). Dr. San-San Yu added that Dr. Gillock's April 2013 evaluation noted that Plaintiff had a normal gait without the use of any ambulatory aides. (Tr. 118). Dr. San-San Yu noted the primary care provider's June 2013 record of Plaintiff's report of episodic swelling, stiffness, and pain in hands, wrists, shoulders, lower back and knees, that ibuprofen helped alleviate the symptoms, and that movement, standing or walking did not exacerbate symptoms. (Tr. 118).

### 7. Consultative Examination Report: Beau C. Jennings, D.O.

On June 12, 2014, Dr. Jennings examined Plaintiff noting that there were "[m]ild limitations in ROM of both shoulders, hips neck" and "[m]oderately limited ROM of lumbar spine." (Tr. 498). X-rays of the spine, shoulders, and right hip were taken and it was noted that

there were no previous images for comparison. (Tr. 498-502). Upon review of the cervical spine x-ray, Dr. Shawn Grant, M.D. found degenerative changes in the mid-cervical spine. (Tr. 498-99). Upon review of the hip x-ray, Dr. Michael Cross, M.D. found minimal degenerative changes of the right hip and SI joints, mild osteoarthritic changes, mild lumbar facet arthropathy. (Tr. 500). Upon review of the lumbar spine. Dr. Cross found an enlarged right L5 transverse process with mild osteoarthritic change (which might be the source of right-sided sacral pain) and mild lower lumbar facet arthropathy, without evidence of significant discogenic disease. (Tr. 501). Upon reviewing x-rays of the shoulders, Dr. Cross found likely postsurgical changes of both AC joints and minimal calcific tendinosis of the left rotator cuff. (Tr. 502).

Dr. Jennings found that Plaintiff was limited to: (1) carrying and/or lifting continuously up to ten pounds and occasionally eleven to twenty pounds; (2) sitting four hours, standing two hours and walking two hours at one time; (3) sitting eight hours, standing four hours, and walking three hours in an eight-hour work day; (4) climbing stairs and stooping occasionally, and (5) never kneeling, crouching, or crawling. (Tr. 508-513). Regarding ADLs Dr. Jennings opined that Plaintiff could: (1) perform activities like shopping; (2) travel without a companion for assistance; (3) ambulate without the aid of assistive devices; (4) walk a block at a maintainable pace on uneven surfaces; (5) use standard public transportation; (6) climb a few steps at a reasonable pace with the use of a single hand rail; (7) prepare simple meals and feed herself; (8) care for personal hygiene, and; (9) sort, handle, and use papers/files. (Tr. 513)

## IV.     Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits under the Act, a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**A.  Residual Functional Capacity (RFC) and Opinion Weight**

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of working an eight-hour work day by failing to account for Plaintiff's severe pain. (Pl. Br. at 5). Plaintiff argues that the ALJ should have adopted the RFC provided by Dr. Jennings (Tr. 508-513) who, in June 2014, opined that Plaintiff could stand no more than four hours in an eight-hour workday as opposed to the RFC adopted by the ALJ who concluded that Plaintiff could stand and/or walk six hours in an eight-hour work day. (Pl. Br. at 5-6). Plaintiff argues that the "ALJ conveniently used an RFC that included light work because to find that the Plaintiffs RFC was sedentary would mean that the Plaintiff was disabled either by virtue of the Grid Regulations or my using the Grid Regulations as a framework." (Pl. Br. at 6). Plaintiff also acknowledges that the "ALJ's RFC is based on an RFC that was provided by two physicians with the State of Oklahoma Disability Determination Division . . . ." (Pl. Br. at 6) (citing the April 2013 opinion of John Vorhies Jr., M.D. at Tr. 98-107 and the August 2013 opinion of San-San Yu, M.D.) (Tr. 109-121). Plaintiff argues "[t]here is no evidence in the record of the [agency] physicians' credentials." Pl. Br. at 7. Plaintiff argues that "the ALJ in effect ignored the RFC findings of Dr. Jennings" and that Dr. Jennings' June 2014 opinion should have outweighed those

of the non-examining agency opinions Pl. Br. at 7-8. Plaintiff also argues that it is confusing for the ALJ to adopt parts of Dr. Jennings' findings, particularly that the ALJ finds greater foot limitations and also finding less limitations regarding the ability to stand and or walk than those opined by Dr. Jennings. Pl. Brief at 9.

The Court does not see the contradiction that Plaintiff argues regarding the RFC of standing and/or walking six hours in an eight-hour work day when Dr. Jennings found that Plaintiff was able to stand four hours and walk three hours in an eight-hour work day. (Tr. 509). In other words, Dr. Jennings found that Plaintiff could stand and/or walk seven hours in an eight-hour workday and the RFC is more generous to Plaintiff than the limitations opined by Dr. Jennings. Dr. Jennings' examination noted "[m]ild limitations in ROM of both shoulders, hips, neck" and "[m]oderately limited ROM of lumbar spine." (Tr. 498). Dr. Jennings indicated that Plaintiff did not need a device to assist with ambulation. (Tr. 509). Although Plaintiff argues that greater weight should be afforded to Dr. Jennings since he examined Plaintiff, nothing in the record suggests that Dr. Jennings reviewed any treatment records and the sole source of medical history was from Plaintiff's reports. (Tr. 494-528). Dr. Jennings does not explain or cite to medical findings in support of his opinion. (Tr. 508-13).

Moreover, Plaintiff fails to address Dr. Gillock's examining opinions from March 2011, April 2011, July 2012, October 2012, and April 2013. (Tr. 384-86, 437-38, 445-49, 455-462). The ALJ reasonably allocated weight to the agency doctors' opinions wherein they thoroughly reviewed the record and Dr. San-San Yu gave weight to the examining opinions of Dr. Gillock. See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (effective from August 24, 2012 to March 26, 2017) (non-examining consultants are "highly qualified . . . medical specialists who are also experts in Social Security disability evaluation"). Plaintiff does not direct the Court to evidence demonstrating significant deterioration of symptoms following the opinions of Drs. Vorhies and

San-San Yu; as such a showing would lend support to the possibility of an ALJ reaching a different conclusion. See, e.g., Decker v. Chater, 86 F.3d 953, 954-55 (10th Cir. 1996) (discussing the relevance of significant deterioration following evidence demonstrating Plaintiff's ability to work); Boswell v. Astrue, 450 F. App'x 776, 778 (10th Cir. 2011) (affirming decision where ALJ correctly observed there was no objective evidence Plaintiff's condition "significantly worsened"); Tarpley v. Colvin, 601 F. App'x 641, 644 (10th Cir. 2015) (rejecting claimant's argument the ALJ gave too much weight to the state agency physician's opinion, who did not review later treating physician opinions, concluding "nothing in the later medical records . . . [demonstrates] a material change in [the plaintiff's] condition would render [the state agency physician's] opinion stale."). In this case, as the ALJ thoroughly reviewed the record and properly characterized Plaintiff's symptoms and functional limitations, substantial evidence supports the ALJ's conclusions.

With regard to Plaintiff's argument that the ALJ determined an RFC of light work with limitations to wrongly avoid sedentary so that Plaintiff would be disabled in the grids, the Court is persuaded by the Tenth Circuit in Anders v. Berryhill, 688 F. App'x 514, 520–22 (10th Cir. 2017). In Anders, the Tenth Circuit reasoned:

> We first disagree that the exertional component of the ALJ's RFC finding is equivalent to sedentary work. Certainly, the lifting limitation is in line with that of sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a). And the ALJ did state Anders could sit for as much as six hours, which is consistent with sedentary work. See SSR 83-10, 1983 WL 31251, at *5 (1983) (explaining that in sedentary work, "sitting should generally total approximately 6 hours of an 8-hour workday"). But the ALJ also found Anders could stand and walk for 6 hours of an 8-hour workday . . . . See id. at *6 (explaining that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time"); cf. SSR 83-12, 1983 WL 31253, at *4 (1983) (stating that although most light work involves prolonged standing, an ALJ should consult a VE "[i]n cases of unusual limitation of ability to sit or stand"). Thus the ALJ's RFC was for light work, albeit not the full range of light work.
> Because Anders's RFC was for a limited range of light work, it fell between grid rules for light and sedentary work directing opposite conclusions: Anders would be disabled under the applicable sedentary-work rule, 201.10, but not under

> the applicable light-work rule, 202.11. In that circumstance, the ALJ was required to determine the degree to which Anders's specific limitations eroded the occupational base for light work. See id. at *2. In easy cases, an ALJ might be able to make that call. See id. But "[w]here the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." Id.

Anders, 688 F. App'x at 520–22 (emphasis removed from original). In this instance, the ALJ presented the VE with a hypothetical of sedentary and light work with limitations that included, inter alia, lifting and/or carry twenty pounds; sitting six hours in an eight-hour workday with normal breaks; standing and/or walking six hours in an eight-hour workday; slight fine motor limitations; postural limitations; no reaching overhead and occasional reaching over shoulder level; simple, repetitive and routine work, with a slight limitation in contact with the public; and contact with the public to be brief and cursory. (Tr. 87-91). The VE identified cashier positions with a reduced availability of jobs by fifty percent. (Tr. 91). The VE also identified checker and sampler positions and grinding polishing positions within the light work category, specific vocational preparation (SVP) level two.[3] (Tr. 91-92). The VE testified that a hypothetical of an individual with Plaintiff's age, education, and work history with an RFC of light work and enumerated limitations still allowed for a sufficient number of jobs in the national economy. (See Tr. 91-92). The Court finds that the RFC for light work with limitations was not the equivalent of a sedentary RFC. Moreover, the ALJ properly developed the vocational testimony, and thus, substantial evidence supports the RFC findings. See Anders, 688 F. App'x at 520–22. The ALJ's RFC and allocation of weight to the medical opinions is supported by substantial evidence. "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination."

---

[3] An SVP of one or two corresponds to unskilled work. Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *3. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010). See also Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015); Richards v. Colvin, 640 F. App'x 786, 790 (10th Cir. 2016).

**B.      Credibility**

Plaintiff argues that although pursuant to SSR 96-7p the ALJ "must" consider all seven enumerated factors in determining credibility of Plaintiff, the ALJ merely made a "conclusory" credibility finding. Pl. Br. at 10-11. However, Plaintiff failed to enumerate what specific material evidence the ALJ failed to address that would necessitate changing the outcome of the decision. Plaintiff argues that since the hearing was held on April 8, 2014, and the function reports were prepared in February 2013 and July 2013, the ALJ erred in relying on such reports since "Plaintiff's problems with her pain are progressive and it is reasonable to believe that her activities of daily living could change for the worse from February 2013 to April 2014." Pl. Br. at 12. Plaintiff fails to direct the court of any evidence of deterioration between February 2013 and April 2014 and Dr. Jennings' June 2014 examination and opinion does not demonstrate a significant deterioration of symptoms regarding Plaintiff's range of motion of joints, mobility, and ADLs. (Tr. 498-513).

Where a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a credibility finding on the claimant's subjective statements. SSR 96-7p (effective from July 1996 to March 2016 and superseded by SSR 16-3p). The credibility finding must be based on a consideration of the entire case record, considering several factors in totality. SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929 (version effective from June 2011 to March 2017).[4] This, however, "'does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence

---

[4] Plaintiff argues that the ". . . ALJ erred in that he failed to consider the Plaintiff's strong work record in his credibility findings." Pl. Br. at 13. However, Plaintiff does not cite any law that would support a finding of reversible error.

he relies on'" in evaluating a claimant's subjective complaints. Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). To evaluate the "intensity and persistence" of Plaintiff's alleged impairment, sections 404.1529(c), 416.929(c) enumerate the factors that the ALJ is to consider in totality. There is a distinction between what an adjudicator must "consider" and what the adjudicator must "discuss" in the disability determination. See SSR 96-8p; see also SSR 06-03p (explaining that to "consider" means to provide explanation sufficient for a "subsequent reviewer to follow the adjudicator's reasoning"); See also Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining although "an ALJ is not required to discuss every piece of evidence," he must discuss "the evidence supporting his decision . . . uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). Under the heading "Evidence Considered," Ruling 96-8p enumerates several types of evidence to "consider," while under the heading "Narrative Discussion Requirements," there are narrower requirements of what an ALJ should "discuss." See SSR 96-8p. While an ALJ must "consider" all of the evidence, the ALJ needs only to discuss sufficient evidence to support each conclusion, resolve any inconsistencies in the evidence as a whole and, set forth a logical explanation of the effects of the symptoms, on the individual's ability to work. See SSR 96-8p. The ALJ is not required to recite everything in the evidence; rather, the ALJ must discuss the relevant evidence that demonstrates Plaintiff's ability to work and "significantly" probative evidence to the contrary. See SSR 96-8p. This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)).

Plaintiff does not address the totality of the evidence including repeated examinations wherein physicians observed that Plaintiff had a normal gait, nearly full range of motion, and

walked without the need for ambulatory devices and expert medical opinions which support the ALJ's conclusion. The ALJ extensively reviewed and accurately summarized the totality of the relevant evidence through the date of the decision. (Tr. 34-38). As explained above, the ALJ reasonably relied on Dr. Gillock's examining opinions from March 2011, April 2011, July 2012, October 2012, and April 2013 (Tr. 384-86, 437-38, 445-49, 455-462), Dr. Vorhies' April 2013 opinion (Tr. 98-104), Dr. San-San Yu's August 2013 opinion (Tr. 109-121), and Dr. Jennings' June 2014 opinion (Tr. 498-513). Drs. Vorhies and San-San Yu, reviewed the evidence up to April 2013 and August 2013, respectively, and opined the severity of Plaintiff's impairments were still compatible with the ability to perform light work with additional limitations. (Tr. 98-104, 109-121). Moreover, Dr. Jennings' June 2014 opinion does not substantively contradict the opinions of Drs. Vorhies and San-San Yu.

Plaintiff fails to meet her burden in demonstrating reversible error. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Based on the foregoing, substantial evidence supports the ALJ's credibility determination. See SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

### C. Hypothetical to Vocational Expert

Plaintiff also argues the ALJ erred in relying on the VE's testimony because it was based on a hypothetical question that did not include all of the limitations in Dr. Jennings' opinion, which Plaintiff characterizes as a "sedentary" RFC assessment. (Pl.'s Br. at 14). As discussed above, the RFC's light work provision is not contradicted by Dr. Jennings' opinion and is supported by substantial evidence. In this instance, the Vocational Expert ("VE") hypothetical mirrors the RFC and because the Court finds the RFC is supported by substantial evidence, there it would be redundant to address the accuracy of the hypothetical which mirrors the RFC. See Orso v. Colvin,

658 F. App'x 418, 420–21 (10th Cir. 2016) (finding unpersuasive argument that hypothetical questions to the VE were improper where the hypothetical questions were appropriately based on the RFC assessment, which was deemed supported by substantial evidence); Rutherford v. Barnhart, 399 F.3d 546, 554, n. 8 (3d Cir. 2005) ("objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself").

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED on March 29, 2018.

                                          **Gerald B. Cohn**
                                          **United States Magistrate Judge**